UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| RONALD A. TILLEY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10-cv-00066-JAW |
| | ) | |
| CANDIS KEEFER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AFFIRMING THE RECOMMENDED DECISION
## OF THE MAGISTRATE JUDGE

## I.     BACKGROUND

### A.     Procedural History

On March 23, 2010, Plaintiff Ronald E. Tilley, acting *pro se*, filed a Second

Amended Complaint against the Maine Department of Probation and Parole,

probation officers Candice Kiefer and Eric Legassie,[1] the city of Bangor, the Bangor

Police Department, and Bangor Police Officer Doug Smith. *Second Am. Compl.*

(Docket # 21) (*Compl.*).   He alleges state law torts as well as federal and state

constitutional violations based on a July 22, 2008 search of his residence and

resultant arrest while he was on probation for a number of criminal convictions. *Id.*

The Defendants filed dispositive motions on October 26, 2010.   While those

motions were pending, Mr. Tilley moved to dismiss all claims without prejudice.

*Pl.'s Mot to Dismiss Compl.* (Docket # 103).   The Defendants objected to Mr. Tilley's

---

[1] As the Magistrate Judge noted in her Recommended Decision, Mr. Tilley spells the probation officers' last names Keefer and Laggasse and that is the way they are entered on the docket. *Recommended Decision on Defs.' Dispositive Mots.and Pl.'s Mot. to Dismiss Without Prejudice* at 3 n.4-5 (Docket # 113) (*Recommended Decision*).   However, the officers spell their last names Kiefer and Legassie respectively in their pleadings, and that is how the Court refers to them.

motion to dismiss on the grounds that a dismissal without prejudice would preclude their obtaining final judgment through their dispositive motions and would allow Mr. Tilley to bring his claims in the future. *Defs Douglas Smith, City of Bangor, and Bangor Police Dep't's Objection to Pl.'s Mot. to Dismiss* (Docket # 105); *Opp'n of Defs. Kiefer, Legassie, and the ME Dep't of Probation and Parole to Pl.'s Mot. to Dismiss the Compl. Without Prejudice*. (Docket # 109).

On December 21, 2010, Magistrate Judge Kravchuk issued a recommended decision that addressed each dispositive motion. *Recommended Decision on Defs' Dispositive Mots. and Pl.'s Mot to Dismiss Without Prejudice* (Docket # 113) (*Recommended Decision*). As an initial matter, the Magistrate Judge recommended denying Mr. Tilley's motion to dismiss without prejudice because the defendants had "devoted significant effort and time in responding to [Mr.] Tilley's complaint and advancing—through a contentious discovery period—to the stage of being able to present dispositive motions for judgment." *Id.* at 2. The Magistrate Judge further recommended that all claims against the Department of Probation and Parole be dismissed because it is entitled to sovereign immunity on the constitutional claims and discretionary immunity on the tort claims. *Id.* at 3-5. She recommended that the Court grant summary judgment to Officers Kiefer and Legassie on the constitutional claims because they are entitled to qualified immunity. *Id.* at 17-22. The Magistrate Judge recommended that the Court grant summary judgment to Officer Smith on the constitutional claims because there was no genuine dispute that his search was reasonable and complied with the Fourth

Amendment. *Id.* at 24. The Magistrate Judge recommended that the Court grant summary judgment to the City of Bangor and Bangor Police Department on the constitutional claims because Mr. Tilley failed to present any evidence of a constitutional violation or insufficient training. *Id.* Finally, the Magistrate Judge recommended the Court grant summary judgment to all defendants on all state tort claims because the defendants are not susceptible to the claims under the Maine Tort Claims Act and because Mr. Tilley failed to exhaust administrative remedies. *Id.* at 24-25.

Mr. Tilley objected to the Recommended Decision on January 11, 2011. *Pl.'s Objection to Magistrate's Recommended Decision* (Docket # 115) (*Pl.'s Objection*). The Bangor Defendants responded to the objection on January 24, 2011 and the Maine Defendants responded on January 28, 2011. *Defs. Douglas Smith, City of Bangor, and Bangor Police Dep't's Resp. to Pl.'s Objection to the Recommended Decision* (Docket # 117); *Response of Defs' Kiefer and Legassie to Pl.'s Objection to the Recommended Decision* (Docket # 118).

B.     **Factual Background[2]**

On January 24, 2006, Mr. Tilley was convicted in Penobscot County Superior Court for the state of Maine of Aggravated Assault and Tampering with a Witness.[3]

---

[2] In accordance with the "conventional summary judgment praxis," the Court recounts the facts in the light most favorable to Mr. Tilley consistent with record support. *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002). However, as the Magistrate Judge observed, Mr. Tilley did not file an opposing statement of material facts in conformance with District of Maine Local Rule 56. He merely filed an affidavit and a statement of allegations, which the Magistrate Judge considered in ruling on the dispositive motions. *Recommended Decision* at 5-6. The Court also considers the affidavit and statement of allegations. However, it deems admitted any statement in the defendants' statement of material facts that is supported by record citations and not controverted by Mr. Tilley's affidavit or statement of allegations. *See* D. ME. LOC. R. 56(f).

*Statement of Material Facts of Defs. Kiefer and Legassie* ¶ 1 (Docket # 88) (DSMF).

He was sentenced to seven years with all but two years, six months suspended and three years of probation. *Id.* ¶ 2. The conditions of Mr. Tilley's probation included: submit to random search and testing for alcohol and drugs, firearms and dangerous weapons; refrain from all criminal conduct; and, answer all reasonable questions by the probation officer and permit the officer to visit the home, place of work or elsewhere. *Id.* ¶ 3.

On February 19, 2008, Mr. Tilley was assigned to probation officer Kiefer, a probation officer for the Maine Department of Corrections. *Id.* ¶¶ 5-6. As a probation officer, her duties include supervising adult offenders on probation, investigating criminal cases and matters concerning probation, arresting and transporting offenders, and conducting routine searches of probationers subject to this condition. *Id.* ¶¶ 8-9.

Probationers are required to report all cell phones to their probation officers. *Id.* ¶ 12. When he was initially assigned to her, Mr. Tilley reported only one cell phone to Officer Kiefer. *Id.* ¶ 11. However, sometime prior to July 22, 2008, Mr. Tilley left a message on Officer Kiefer's voicemail informing her of a new contact number. *Additional Attachments* (Docket # 97) Attach. 1 (*Affidavit*).

On or about July 11, 2008, Mr. Tilley was served with a protective order prohibiting him from having direct or indirect contact with a female juvenile. DSMF ¶ 13. Mr. Tilley informed Officer Kiefer that he had been served with the

---

[3] Mr. Tilley was also convicted of escape, terrorizing, eight counts of violation of conditions of release and nine counts of violation of a protective order on the same day. DSMF ¶ 4.

protective order. *Id.* ¶ 14. After the service of the protective order, Officer Kiefer was contacted by the juvenile's mother who was extremely concerned because she believed Mr. Tilley was in contact with her daughter. *Id.* ¶ 15.

On the night of July 22, 2008, Officer Kiefer was conducting routine probation searches with another probation officer, Eric Legassie, whose duties were similar to Officer Kiefer's. *Id.* ¶¶ 16, 19. Officer Kiefer considered Mr. Tilley at a high risk for violating probation based on his extensive criminal record. *Id.* ¶ 20. Additionally, Mr. Tilley had recently moved to a new camper which Officer Kiefer had not yet visited. *Id.* ¶ 21. Officer Kiefer decided to conduct a home check of Mr. Tilley's new residence. *Id.* ¶ 22. Neither the Bangor Police Department nor any other law enforcement agency requested either officer to conduct the probation search; neither probation officer informed the Bangor Police Department or any other law enforcement agency of any investigation of Mr. Tilley prior to July 22, 2008. *Id.* ¶ 23.

At approximately 10:30 p.m., Officer Kiefer knocked at Mr. Tilley's door. *Affidavit* at 1. After Officer Kiefer identified herself, Mr. Tilley opened the door and allowed the officers to enter the camper. *Id.*; DSMF ¶¶ 27-28. Once in the camper, Officer Kiefer asked Mr. Tilley about the recent protective order and explained that she had received a tip that he may have had contact with the juvenile female. *Affidavit* at 1. Officers Kiefer and Legassie observed two cell phones on the table. DSMF ¶ 29. In the experience of officers Kiefer and Legassie, it is common for probationers to purchase a second cell phone without reporting it to their probation

officers in order to conduct illegal activity such as drug transactions. DSMF ¶ 31.
Officer Legassie picked up one of the cell phones on the table and began searching
its text file to see if Mr. Tilley had made contact with the juvenile female. *Affidavit*
at 1. When Mr. Tilley protested, Officer Legassie told him that probation officers
could search the phone because Mr. Tilley was on probation. *Id.* Officer Legassie
observed numerous text messages both to and from the juvenile who was the subject
of the protective order. DSMF ¶ 33. After some discussion, it was determined that
the contact was prior to the protection order. During the discussion, Mr. Tilley had
picked up the other phone off the table, and Officer Kiefer said she wanted to search
it before she left. *Affidavit* at 2. A message came in on the second phone as Mr.
Tilley held it. *Id.* Officer Lagassie grabbed the second phone from Mr. Tilley's hand
before Mr. Tilley could read the message. *Id.* The message was from the juvenile
female and an additional message came in from her while the officers were present.
*Id.*; DSMF ¶ 34. Officer Legassie searched the second phone. *Affidavit* at 2. Upon
searching the two phones,[4] the officers found several messages that indicated Mr.
Tilley was having contact with the juvenile female in violation of the protective
order. DSMF ¶ 36; *Affidavit* at 2. Several of the text messages were sexual in
nature and caused both officers concern. DSMF ¶ 35. The officers thought this
constituted new criminal conduct and a probation violation. DSMF ¶ 38

Officer Kiefer asked Mr. Legassie to detain Mr. Tilley. *Affidavit* at 2. Mr.
Legassie placed Mr. Tilley in handcuffs and told him to sit on the couch. *Id.*

---

[4] It is not clear what was found on which phone. The Defendants' statement of material facts only
mentions searching one phone; Mr. Tilley mentions two.

Officers Kiefer and Legassie continued to search the phone and decided to call the Bangor Police Department to report the new criminal charge of Violation of a Protective Order. *Id.*; DSMF ¶ 39. While they waited for the Bangor Police Department, the Officers ordered Mr. Tilley to remain sitting on the coach; yet, Mr. Tilley stood up at least twice, stating that he did not have to comply with the orders and would stand in his own house if he wished to stand. *Affidavit* at 3; DSMF ¶ 41-43. Finally, Officer Legassie pushed Mr. Tilley back down onto the couch and again ordered him to remain seated. *Affidavit* at 3; DSMF ¶ 46. Officers Kiefer and Legassie believed it was necessary for Officer Legassie to place Mr. Tilley back in a sitting position as Mr. Tilley was refusing to comply with direct orders and was becoming aggressive. DSMF ¶ 51. Officer Kiefer conducted a search of the residence and located several items evidencing contact with the female juvenile as well as an inappropriate relationship between Mr. Tilley and the female juvenile. *Affidavit* at 3; DSMF ¶ 47.

Officer Doug Smith from the Bangor Police Department arrived to investigate the new criminal conduct. DSMF ¶ 48; *Affidavit* at 3. Officer Kiefer requested Mr. Tilley answer the door but Mr. Tilley refused. *Affidavit* at 3. Officer Kiefer then went outside, spoke with Officer Smith, and allowed Officer Smith into Mr. Tilley's home over Mr. Tilley's objections. *Id.* Officer Smith reviewed the text messages and took Mr. Tilley into custody for Violation of a Protective Order. *Id.*; DSMF ¶ 49.

Officers Kiefer and Legassie did not observe any physical marks or injuries on Mr. Tilley at any point on July 22, 2008. DSMF ¶ 52. Mr. Tilley never

complained of any injuries nor requested to see any medical professional for any injuries on July 22, 2008. DSMF ¶¶ 53-54.

On or about July 24, 2008, Officer Kierfer moved to revoke Mr. Tilley's probation for failure to refrain from all criminal conduct due to the new charge of Violation of a Protective Order. DSMF ¶ 55. On August 15, 2008, Mr. Tilley admitted the probation violation. DSMF ¶ 56. He was sentenced to serve the remaining four years and six months of his sentence and his probation was terminated. DSMF ¶ 57.

## II. DISCUSSION

### A. Review of Recommended Decision

The Court has conducted a *de novo* review of the Magistrate Judge's Recommended Decision. The Court agrees with her well-reasoned opinion. Central to her recommendations is her analysis of *United States v. Graham*, 553 F.3d 6 (1st Cir. 2009) and her conclusion "the contours of the Fourth Amendment right based on the facts confronted by [Officers] Kiefer and Legassie were not sufficiently clear so that a reasonable officer would know that the seizure of the cell phone and the immediate review of the text messages was unlawful." *Recommended Decision on Defs.' Dispositive Mots.* at 21-22 (Docket # 113) (*Recommended Decision*). The Court agrees and concludes that there is no evidence that any Defendant acted unreasonably in light of the indefinite state of Fourth Amendment jurisprudence. *See United States v. Knights*, 534 U.S. 112, 119 (2001) ("The touchstone of the Fourth Amendment is reasonableness"). The Court, nevertheless, searches Mr.

8

Tilley's objections for any reason not to adopt the Magistrate Judge's recommendations.

## B. Ronald Tilley's Objections

Mr. Tilley's objection focuses on the Magistrate Judge's qualified immunity analysis. He reiterates his contention that the search of his cell phone was a Fourth Amendment violation and contends that the law was clear at the time of the search. *Pl.'s Objection* at 1-2. However, he offers no authority to rebut the Magistrate Judge's conclusion that as of July 22, 2008, it was not "clearly established" that a warrantless search of a probationer's cell phone violated a probationer's Fourth Amendment rights.

Mr. Tilley's objection fails to address a decisive point of the Recommended Decision, namely that as of July 22, 2008, Mr. Tilley did not have a "clearly established" constitutional right prohibiting the probation officers' search of his cell phone. The Recommended Decision explained that public officials are "entitled to qualified immunity unless (1) the facts that a plaintiff has alleged or shown make out a violation of a constitutional right and (2) the right at issue was 'clearly established' at the time of [the defendants'] alleged misconduct." *Recommended Decision* at 17-18 (quoting *Melendez-Garcia v. Sanchez*, 629 F.3d 25, 35 (1st Cir. 2010)). Rather than "limn the contours of difficult constitutional issues" by "determining the outer parameters of a probation officer's authority to conduct a warrantless search under the facts of this case," the Magistrate Judge jumped to

the second prong of the qualified immunity test, as authorized in *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009). *Id.* at 17.

The Magistrate Judge examined the state of the Fourth Amendment jurisprudence as it applied to probationers at the time of the search to determine whether the search violated a clearly established right. Focusing on *United States v. Graham*, 553 F.3d 6 (1st Cir, 2009), which was decided roughly six months after the search of Mr. Tilley's cell phone, the Magistrate Judge noted that the First Circuit considered whether law enforcement could lawfully search a probationer's residence without a warrant. 553 F.3d at 15. The *Graham* Court recognized that probationers have "a substantially diminished expectation of privacy," and that "[t]his expectation of privacy can be further shaped by search conditions in the probation order. . . ." *Id.* at 15-16. The *Graham* Court concluded "we cannot say that where, as here, the police possess reasonable suspicion that a probationer is violating the terms of probation, the Fourth Amendment demands that the police secure a search warrant before executing a probation search." *Id.* Moreover, because reasonable suspicion was found in that case, the *Graham* Court declined to "examine whether a suspicionless search would offend the Fourth Amendment." *Id* at 18 n.7. The Magistrate Judge reasoned that the *Graham* Court's careful consideration of whether a warrantless probation search violated the Fourth Amendment suggested that the law surrounding the constitutionality of probation searches was not clearly established at that time. *Recommended Decision* at 21.

In the face of this reasoning, Mr. Tilley simply insists that he had a clearly established constitutional right at the time of the search. *Pl.'s Objection* at 1-2. He asks the Court to consider a set of hypothetical facts. In his hypothetical, probation officers enter a probationer's residence and find two unopened letters lying face down on a table. *Id.* The probation officers flip over the letters to find they are addressed to the probationer and show the return address of an individual the probationer is prohibited from contacting under a protective order. *Id.* The officers open one letter and find a message from the prohibited individual. *Id.* at 2. Mr. Tilley argues that opening the letter would exceed the bounds of a valid probationary search because the probationer did not open the letter and thus did not violate the protective order. He argues that the search of his cell phone is no different, asserting that the cell phone was unrelated to any condition of probation. *Id.*

Mr. Tilley's hypothetical is unconvincing. First, letters are not cell phones. Cell phones can conduct virtually instantaneous two-way communication; letters cannot. Furthermore, unlike a letter, a search of cell phone data commonly reveals the communication history. Here, for example, the probation officers discovered messages from Mr. Tilley to the juvenile female on his cell phone. An exact history of outgoing correspondence could not be discovered from a search of a single piece of incoming mail. Second, receiving two letters is unlike possessing two cell phones. A recipient has little control over the letters the United States Postal Service delivers; whereas, a person cannot involuntarily possess two cell phones. Moreover, one cell

11

phone is typically sufficient; for a probationer to possess more than one raises a natural suspicion. In contrast to the questionable legitimate utility of a second cell phone, Officers Kiefer and Legassie averred that "it is common for probationers to purchase a second cell phone without reporting it to their probation officers in order to conduct illegal activity such as drug transactions." *Statement of Material Facts of Defs. Kiefer and Legassie* ¶ 31 (Docket # 88) (DSMF). Third, the search of the cell phone was related to conditions of probation. Mr. Tilley's conditions of probation instructed him to "refrain from all criminal conduct and violation of federal, state and local laws." *Pl.'s Objection to Defs.' Summ. J. Mot.* (Docket # 94) Attach. 1 *State of Maine Conditions of Probation* (*Probation Conditions*); DSMF ¶ 3. Violation of a protective order is a crime in Maine. 19-A M.R.S. § 4011. After service of the protective order, the juvenile female's mother told Officer Kiefer that she believed Mr. Tilley had been in contact with her daughter in violation of the protective order. DSMF ¶ 15. Accordingly, searching Mr. Tilley's cell phone for evidence of contact with the juvenile female was related to the probation condition that he refrain from criminal conduct. In sum, Mr. Tilley's hypothetical, gives the Court no grounds to disturb with the Magistrate Judge's opinion.

Finally, Mr. Tilley's objection reiterates his characterization of the probation search as a ruse for a law enforcement investigation. *See Pl.'s Objection* at 3. Mr. Tilley has offered no evidence to support this assertion. As the Magistrate Judge pointed out, Mr. Tilley did not file a statement of material facts under District of Maine Local Rule 56; instead, he filed an affidavit and a statement of allegations,

12

which the Magistrate Judge and this Court have considered in ruling on the dispositive motions. *Recommended Decision* at 5-6. Neither of Mr. Tilley's documents contains any evidence of contact between the Bangor Police Department and the probation officers prior to the search, much less evidence that the Bangor Police Department directed the probation officers to carry out in its stead a police investigation of Mr. Tilley. *See Additional Attachments* (Docket # 97) Attach. 1 (*Affidavit*) and Attach. 2 (*Allegations*). It is immaterial that Officer Kiefer based her decision to check on Mr. Tilley at least in part on the suspicion that Mr. Tilley was violating the protective order. A condition of Mr. Tilley's probation was not to commit another crime, *see Probation Conditions*; Mr. Tilley had previously been convicted of nine counts of violating a protective order, DSMF ¶ 4; Mr. Tilley had informed Officer Kiefer that he had been served with his most recent protective order, *id.* at ¶ 14; and, Officer Kiefer had received a tip that Mr. Tilley had violated the recent protective order, *id* at 15. With this cumulative evidence, the probation officers had reason to suspect a probation violation and their search was a valid probation search. Mr. Tilley presented no facts that dispute the probation officers' independent motivation to conduct a routine probation search. *See United States v. Scott,* 566 F.3d 242, 245-48 (1st Cir. 2009) (finding law enforcement did not use parole officers to circumvent Fourth Amendment constraints where parole officers made independent decision to initiate warrant and arrest).

## III.   CONCLUSION

The Court ORDERS that the Recommended Decision of the Magistrate Judge (Docket # 113) is hereby ADOPTED.  The Court GRANTS on all counts the Bangor Police Department's and Officer Doug Smith's Motion for Summary Judgment (Docket # 85), GRANTS on all counts Officers Kiefer and Legassie's Motion for Summary Judgment (Docket # 87), and GRANTS on all counts the Maine Department of Probation and Parole's Motion to Dismiss (Docket # 89).  Further, the Court DENIES Plaintiff Ronald Tilley's Motion to Dismiss (Docket # 103).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 22nd day of June, 2011